IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 12 C 7643 |
| ) | |
| JOSEPH R. ROMINSKI, LORRINE ) | |
| K. WALLIS, GREAT LAKES CREDIT ) | |
| UNION, and LAKE COUNTY, ILLINOIS, ) | |
| ) | |
| Defendants. ) | |

**CORRECTED**
**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

The government has sued Joseph Rominski for unpaid federal income taxes, interest, and penalties. It seeks to enforce a federal tax lien against property in Lake County, Illinois, which the parties refer to as the Red Pine property. The government has also named Lorrine Wallis, Rominski's former wife, as a defendant because she is the legal title holder to the property. The government has joined the Great Lakes Credit Union and Lake County, Illinois as defendants because they each have a security interest in the property.

On April 5, 2013, the Court entered an agreed judgment holding Rominski liable for unpaid federal income taxes, interest, and penalties and determining that the overdue amounts constitute liens on all of Rominski's property and rights to property. The judgment reads as follows:

> IT IS HEREBY ORDERED AND ADJUDGED that the defendant Joseph
> R. Rominski, SS No. XXX-XX-0706, is personally liable to the plaintiff,

> United States, in the amount of $382,654.77, as of August 31, 2012, for federal income taxes assessed against him. On and after August 31, 2012, interest has accrued and shall accrue on these adjudged liabilities as specified in 26 U.S.C. §§ 6601, 6621-22, 28 U.S.C. § 1961(c), along with all other statutory additions. IT IS FURTHER ORDERED and ADJUDGED that under 26 U.S.C. §§ 6321-22, the amounts due, described above, constitute liens in favor of the United States upon all property and rights to property belonging to Joseph R. Rominski.

See Dkt. no. 46.

The government has moved for partial summary judgment against Rominski, arguing that a lien arising from the April 2013 judgment has attached to the Red Pine property.[1] For the reasons stated below, the Court denies the government's motion.

## Background

Rominski is an attorney in private practice. He has chosen not to carry legal malpractice insurance for many years due to its cost, but he does not recall when he allowed his last malpractice policy to lapse. Rominski Dep. at 30-31. Rominski has three adult daughters with his first ex-wife, from whom he was divorced in 1993.

Rominski bought the Red Pine property on March 31, 1994 with a $50,000 cash down payment and a $200,000 mortgage loan from Great Lakes Credit Union. Rominski was the sole obligor on the mortgage loan, and he took title to the property in fee simple. Since purchasing it, Rominski has continuously resided on the property and has paid for any utilities, insurance, real estate taxes, repairs, and improvements associated with the property.

On September 14, 1996, Rominski married Wallis. Wallis moved onto the Red

---

[1] The Court notes that the government failed to file a reply to Rominski's response to the motion and did not seek any sort of an extension of time.

Pine property with Rominski. She also kept a townhouse, also located in Illinois, that was titled solely in her name. On March 31, 1997, Wallis signed a trust agreement that: 1) created a revocable living trust for her, 2) appointed her trustee and exclusive beneficiary of the trust, 3) gave her "complete, unfettered control over all property in the TRUST, including the right to sell, transfer, or encumber it," and 4) stipulated that, upon her death, any property in the trust would pass on to Rominski's three daughters in equal shares. Govt.'s Br. at 5. That same day, Rominski signed a quitclaim deed transferring the Red Pine property to the trust for $10.00 in consideration.

Rominski testified that he transferred the Red Pine property to Wallis as trustee and beneficiary for two reasons: to protect the property from any clients who might sue him for legal malpractice, and to ensure that the property eventually passed to his children. Rominski Dep. at 28. Wallis likewise testified that she believed that Rominski was transferring the property for these reasons when she signed the trust agreement. Wallis Dep. at 19.

In 1996, Rominski earned a total of $137,000 in adjusted gross income, but he did not file an income tax return or pay income taxes. During his deposition, Rominski initially attributed his failure to file that year to having incurred a separate tax liability of approximately $60,000 after selling a car wash acquired in his first divorce for $175,000 less than he originally paid for it. Rominski Dep. at 34-35. When, however, the government's lawyer asked Rominski if he had already incurred the tax liability when he transferred the Red Pine property to Wallis as trustee and beneficiary, he replied, "No, I don't think I even knew about that until two or three years later. . . . Maybe that $60,000

3

liability from '96 had to do with liquidating retirement accounts or something. Maybe that was part of it." *Id.* at 42-43.

Rominski filed his federal income tax return for 1996 in June 2001. As of that date, the government assessed a total of $75,212.71 in unpaid federal income taxes, interest, and penalties. At the time, Rominski and Wallis were still married and living together at Red Pine property.

On December 10, 2001, Wallis signed a quitclaim deed transferring the Red Pine property from herself as trustee and beneficiary to herself as an individual. Rominski testified that Wallis did so to obtain a loan of approximately $50,000-$75,000, which would then be used to pay some of his tax debt. Rominski Dep. at 50-51. Wallis similarly testified that Rominski set up the transfer to help her obtain a loan for him. Wallis Dep. at 29. Wallis was unable to obtain the loan, but she did not transfer the property back to her trust.

Rominski and Wallis separated in September 2002, about fifteen months after the effective date of the tax assessment. Wallis moved from the Red Pine property back into her townhouse. On February 24, 2004, Rominski and Wallis divorced. The divorce decree makes no specific mention of the Red Pine property, but it does state that they had entered into an agreement to divide all of their real and personal property.

Since the divorce in 2002, Wallis has visited the Red Pine property only once, to pick up one of Rominski's daughters. She has not attempted to sell, encumber, or convey any interest in the Red Pine property. Rominski has continued to live on the property. He does not pay Wallis for its use. He continues to pay all of the expenses

4

associated with the property, including the mortgage and payments for utilities, insurance, real estate taxes, repairs, and improvements. As a result, Rominski is the only person who is currently receiving a benefit from the property. Wallis testified during her deposition that the fact that her name is on deed to the Red Pine property is an "oversight," and she stated that the "[i]t is Joseph's property." Wallis Dep. at 35. Rominski, for his part, says that he is making the mortgage payments because he is still the obligor on the underlying promissory note. He says that because Wallis is the sole legal owner of the property, he would have no choice but to relocate if she directed him to do so.

In addition to the previously-referenced tax assessment for 1996 that the Internal Revenue Service (IRS) made in 2001, the IRS assessed Rominski for unpaid taxes, interest, and/or penalties on at least eight subsequent occasions from 2003 to 2008. As indicated earlier, on April 5, 2013, the Court entered in the present case an agreed judgment finding that Rominski was liable for unpaid federal income taxes, interest, and penalties not only for 1996, but also for 2000 through 2005. As of August 31, 2012, Rominski owed the government a total of $382,654.72.

The government seeks to enforce a lien against the Red Pine property to partially satisfy the amount due. It has moved for partial summary judgment against Rominski, arguing that he has remained the true owner of the property ever since purchasing it in 1994 and that Wallis is a mere nominee. The government characterizes Rominski's 1997 transfer of title to Wallis as trustee and beneficiary as a "sham transaction designed to thwart collection efforts by Mr. Rominski's creditors." Govt.'s Br. at 7. The government argues alternatively that a tax lien has attached to the Red Pine property

via Rominski's mortgage payments. It also argues that Rominski lacks standing to contest the imposition of a lien on the Red Pine property because he denies an ownership interest in the property. For the reasons stated below, the Court denies the government's motion.

## Discussion

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> A material fact is one identified by the substantive law as affecting the outcome of the suit. . . . A genuine issue exists with respect to any such material fact, and summary judgment is therefore inappropriate, when the evidence is such that a reasonable jury could return a verdict for the non-moving party.

*Hanover Ins. Co. v. N. Bldg. Co.,* No. 13–2675, 2014 WL 1810586, at *2 (7th Cir. May 8, 2014) (internal quotation marks omitted). In considering the government's motion, the Court "examin[es] the record in the light most favorable to [Rominski] and constru[es] all reasonable inferences from the evidence in his favor." *Cannon v. Burge*, No. 12-1529, 2014 WL 2185016, at *6 (7th Cir. May 27, 2014).

Under 26 U.S.C. § 6321, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." The lien attaches to the taxpayer's property or rights to property when the tax is assessed (unless another date is specified by law) and remains until the person satisfies the liability or it "becomes unenforceable by reason of lapse of time." *Id.* § 6322. A tax lien "applies to property owned by the delinquent at any time during

6

the life of the lien," including property that he or she acquires after the assessment date. *Glass City Bank of Jeanette v. United States*, 326 U.S. 265, 268 (1945). "We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Drye v. United States*, 528 U.S. 49, 58 (1999).

**A.     Ownership of the Red Pine property**

"The Supreme Court has broadly interpreted section 6321 to include not only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251(6th Cir. 2005) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977)). The government argues that the 1997 transfer was a sham designed to shield Rominski's home from creditors like the government and made Wallis a mere nominee, not a true owner. "A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001).

The government points to Rominski's and Wallis's dealings vis-à-vis the Red Pine property as proof that he is the actual owner and she is a mere nominee. First, it notes that Rominski has continuously shouldered the financial responsibilities associated with the Red Pine property, including payments for mortgage, utilities, insurance, real estate taxes, repairs, and improvements. And it argues that apart from the period of time that Wallis resided on the property while she was married to Rominski (approximately 1996 to 2002), he, and he alone, has enjoyed the benefits associated

with the property, including residing there and receiving income tax deductions from mortgage interest and real estate tax payments. The government therefore argues that Rominski remained the true owner of the Red Pine property even after the 1997 transfer, with Wallis serving only as his nominee. As a result, the government argues, a federal tax lien attached to the property as of June 4, 2001, the date of assessment.

Rominski contends that he "irrevocably divested himself of all legal ownership to [Red Pine]" through the 1997 transfer to Wallis, which "has nothing to do with unpaid taxes . . . . This transfer of ownership was for estate planning purposes and for professional liability purposes," namely to ensure that the property passed on to his children and to shield it from any clients who might sue him for legal malpractice. Rominski's Br. at 1-2. He maintains that he has "no rights to control the property under the terms of the Living Trust. . . . If [Wallis] were to tell Rominski to vacate the property, he would have no legal argument to the contrary." *Id.* at 2.

Ordinarily, the Court would look to Illinois law to determine whether Wallis qualified as nothing more than Rominski's nominee with respect to the Red Pine property following the 1997 transfer. But "Illinois law does not adequately articulate the nominee test . . . ." *United States v. N. States Invs., Inc.*, 670 F. Supp. 2d 778, 788 (N.D. Ill. 2009). When state law provides little or no criteria for a nominee relationship, courts look to the common law factors used by federal courts to determine whether a person is a nominee. *See id.* ("[T]his court follows the federal common law to the extent that federal law adds flesh to the state law bones."); *May v. United States*, No. 07-10531, 2007 WL 3287513, at *2 (11th Cir. Nov. 8, 2007) ("[S]ince Alabama law fails to delineate a test for determining the 'real intent' of a title transfer between spouses, we

8

are guided by the common-law factors generally applied by federal courts to determine the existence of a nominee relationship."); *Cody v. United States*, 348 F. Supp. 2d 682, 694 (E.D. Va. 2004) ("When faced with similar tax levy disputes, federal courts sitting in states whose law of nominee ownership is similarly undeveloped have typically looked to nominee ownership criteria employed in other federal tax collection cases.").

With slight variations, federal courts have used the following factors to determine whether a person is a nominee with respect to certain property: 1) the person paid no or inadequate consideration for the property; 2) the property was transferred to the person in anticipation of a lawsuit or liability, 3) the transferor of the property continues to possess, enjoy, and control the property despite the transfer, 4) the person and transferor have a close relationship, and 5) the transfer of property was never recorded. *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284, n. 1 (5th Cir. 2000); *United States v. Towne*, 406 F. Supp. 2d 928, 937 (N.D. Ill. 2005). Some courts have considered the additional factor of whether the transferor used personal funds to purchase or maintain the property. *Cody*, 348 F. Supp. 2d at 694-95; *Baum Hydraulics Corp. v. United States*, 280 F. Supp. 2d 910, 917, n. 14 (D. Neb. 2003); *In re Richards*, 231 B.R. 571, 579 (E.D. Pa. 1999).

Rominski transferred the Red Pine property to Wallis, to whom he was married at the time, for nominal consideration. He did so approximately a year after failing to file a tax return and pay taxes for which he presumably knew he would be assessed. These

factors weigh in favor of a determination that Rominski transferred the property to Wallis as a mere nominee.[2]

The government argues, and it is certainly the case, that Rominski continued to possess and enjoy the Red Pine property even after transferring it. The government also emphasizes that at all times, the maintenance of the property, insurance, mortgage payments, and so on were all financed by Rominski. In the Court's view, however, the government's brief does not adequately take account of the fact that Rominski and Wallis were married, and living together, from the time of the transfer in 1997 through the time of the assessment in 2001. Even though Rominski continued to possess and enjoy the use of the property at the relevant time, so did Wallis. And even if the money used to maintain the property, make mortgage payments, and the like came from Rominski's income, during the time they were married and living together—which, again, was the case at the time of the assessment—those were marital funds that, during the marriage, were used in a way that benefitted both Rominski and Wallis. In this regard, it is worth noting that at least one court has suggested that a number of the factors for the nominee test "provid[e] little utility in distinguishing tax shams from legitimate titling decisions between spouses," largely because those factors nearly always would point in favor of finding inter-spousal transactions to lack legitimacy. *Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005).

---

[2] The parties have not discussed, and thus the Court does not address, how the property settlement connected with the Rominski-Wallis divorce affects matters or, more specifically, whether the circumstances of that settlement might suggest the giving by Wallis of some consideration for the Red Pine property.

The situation was different after 2002, when the couple separated and Wallis moved from the property. The government's argument on the nominee issue is, however, premised on the state of affairs as it existed up to and through the date of the assessment, namely 2001. As the Court has indicated, the government's contention here is that the transaction was a sham *in 1997* when it was entered into.

A key issue is whether Rominski made the transfer in anticipation of a lawsuit or liability. Courts have interpreted this factor in the nominee test to involve a situation in which the taxpayer transferred property to shield it from a creditor associated with an expected lawsuit or liability, not simply that the taxpayer expected a lawsuit or liability at the time of transfer. *See, e.g., Towne*, 406 F. Supp. 2d at 938 ("Likewise, the Government did not present any evidence as to whether the Sams Trust and Shull placed the property in the name of the Sams Trust in order to avoid collection activity."); *Cody*, 348 F. Supp. 2d at 695 ("[T]he record convincingly reflects that the purchase of the townhouse took the form that it did in order to place as much of the townhouse as possible beyond the reach of the Friedlanders' creditors, including the government . . . ."); *Richards,* 231 B.R. at 579 ("The Bankruptcy Court's prior ruling that the transfer was not a fraudulent conveyance essentially precludes any contention that the Richards transferred the property in order to avoid any then current debt to the IRS.").

Although Rominski may be assumed to have, in 1997, expected the IRS to levy unpaid federal income taxes on him in the relatively near future, it is less clear whether avoiding that or any other particular expected liability was part of his motivation for transferring the Red Pine property to Wallis. Rominski testified during his deposition that he initiated the 1997 transfer to Wallis for estate planning and professional liability

11

purposes, namely to ensure that the Red Pine property passed on to his children and to shield it from clients who might one day sue him for legal malpractice. That rather inchoate concern about potential liabilities is not the type of expected liability that has tended to carry the day for the government in cases involving a claim that the title holder of property is a nominee.

The government points out that Rominski could have easily transferred the Red Pine property to his children without giving Wallis "complete, unfettered control over" it, "including the right to sell, transfer, or encumber it," which could complicate rather than facilitate the later transfer. Govt.'s Br. at 5. That is certainly so, and the fact that Rominski's claimed purpose could have been accomplished much more simply may provide reason to doubt his claim. But this does not render his claim incredible as a matter of law. The Court is ruling here on a motion for summary judgment, not on evidence presented at a trial.

The government contends that Rominski has essentially conceded that the 1997 transfer was a sham by asserting his second explanation for the transfer. It argues that

> shielding the RED PINE PROPERTY from Joseph Rominski's creditors was the one and only reason for the title transfers at issue. Mr. Rominski acknowledged this expressly, explaining that he does not carry legal malpractice insurance, so he transferred the RED PINE PROPERTY to Ms. Wallis via a revocable living trust to prevent malpractice creditors from reaching it.

*Id.* at 4. But the record does not indicate that Rominski actually expected a malpractice suit. In *Richards*, the court explicitly distinguished the sort of activity contemplated by the second factor of the nominee test from "estate planning," in that case, "establish[ing] [a] trust to protect the home generally from future creditors." *Richards*, 231 B.R. at 579.

A reasonable fact-finder could conclude that Rominski transferred the Red Pine property to Wallis in 1997 for legitimate estate planning purposes.

The government relies on, among other cases, the Eleventh Circuit's decision in *May*, and the Court acknowledges that the two cases have significant similarities. In *May*, the court affirmed a grant of summary judgment in favor of the government in a tax lien case involving a claim that the record owner of property was a nominee for the delinquent taxpayer. The Court found that the delinquent taxpayer had: 1) transferred property to his wife for no consideration; 2) "enjoyed full beneficial ownership" and "resided uninterrupted on the property" even after the transfer; and 3) "used his personal funds to purchase the property . . . make all mortgage payments on the property, pay all property taxes, pay all utility bills, and pay for all renovations and repairs to the property." *May*, 2007 WL 3287513, at *1, 3. The Court concluded that the taxpayer's wife served only as his nominee and that "a federal tax lien arising out of [the taxpayer's] indebtedness may attach to the property" even though the district court found "a genuine issue of material fact as to whether the Property was placed in [the taxpayer's wife's] name in anticipation of a lawsuit or other liability*." May v. Parcel of Land*, 458 F. Supp. 2d 1324, 1339 (S.D. Ala. 2006). In *May*, however, the husband's initial transfer of the property was made after the IRS had made an assessment against him for unpaid taxes. *May v. Parcel of Land*, 458 F. Supp. 2d 1324, 1326 n.5 (S.D. Ala. 2006). That is a significant factor that is not present in this case.

Though the case is arguably a close one for summary judgment purposes, the Court concludes that genuine disputes regarding facts material to the nominee issue preclude entry of summary judgment in the government's favor.

**B.     Rominski's mortgage payments on the Red Pine property**

The government argues in the alternative that the federal tax lien associated with Rominski's tax debts has attached to the Red Pine property through his making of mortgage payments relating to the property. The government reasons that the lien attached to all of Rominski's property, including his cash, based on *United States v. Bell Credit Union*, 860 F.2d 365, 367 (10th Cir. 1988) (stating that "taxpayer deposit accounts in banks are subject to levy by the government"), and *In re Brown*, 280 B.R. 231 (Bankr. E.D. Wis. 2002) (finding that unclaimed funds held by the Clerk of Bankruptcy Court after a debtor's chapter 13 case was dismissed were subject to a federal tax lien). The government argues that "[w]hen Mr. Rominski used . . . money [that was subject to a federal tax lien] to pay down the principal on the Great Lakes Mortgage, the [federal tax lien] on the money attached to the Red Pine Property." Govt.'s Br. at 7 (capitalization omitted).

The only authority that the government cites in support of this proposition is *Municipal Trust and Savings Bank v. United States*, 114 F.3d 99 (7th Cir. 1997). Rominski contends that he is legally obligated to pay his mortgage and that "[n]one of the case law cited by Plaintiff support the argument that mortgage payments to Great Lakes Credit Union creates a lien on the Red Pine property." Rominski's Br. at 4.

The Court acknowledges that a federal tax lien may attach to an individual's funds, as shown by the two cases cited by the government. But *Municipal Trust* does not support the government's contention that using cash encumbered by a federal tax lien to pay the mortgage on real estate causes the lien to attach to the real estate. That case involved an interest in a partnership to which a tax lien attached. The court simply

14

concluded that the lien "stuck to [the land] through later transfers" of that interest and other property or property rights for which it had been exchanged. *Mun. Trust*, 114 F.3d at 101. This case, however, is different. The government cites no authority for the proposition that because a tax lien attaches to the taxpayer's cash, the lien "sticks to" real property not that the taxpayer purchased with the cash, but rather real property that is subject to a mortgage on which the cash has been used to make payments.

**C.     Whether Rominski lacks standing to contest this case**

The government's final argument is that Rominski lacks standing to contest the case because he has disavowed any interest in the Red Pine property. The government states that "[i]f he truly has no interest in the RED PINE PROPERTY, then Mr. Rominski has no reason to contest the United States' enforcement action." Govt.'s Br. at 8.

"To invoke the authority of a federal court, a litigant must have 'an injury that is concrete, particularized, and actual or imminent; fairly traceable to the defendant's challenged action; and redressable by a favorable ruling.'" *Korte v. Sebelius*, 735 F.3d 654, 667 (7th Cir. 2013) (quoting *Horne v. Flores*, 557 U.S. 433, 445 (2009)). In *Mueller v. Raemisch*, 740 F.3d 1128, 1132 (7th Cir. 2014), the Court concluded that the state's intention to enforce a particular requirement against the plaintiffs, and the fact that the state's belief that it had the authority to do so was not so preposterous that the plaintiffs could ignore the effort, was enough to give them standing to bring the case.

Rominski has not invoked the authority of the federal courts; he is a defendant in this case, not the plaintiff. The government's request to assert a lien against property in which Rominski resides, and ultimately to proceed with a forced sale of that property in

15

order to enforce a judgment against Rominski, is enough to allow him to challenge the assertion of a lien. The government is not entitled to summary judgment on this basis.

## Conclusion

For the foregoing reasons, the Court denies the government's motion for partial summary judgment. A telephone status hearing is set for July 1, 2014 at 8:45 a.m. for the purpose of setting a trial date. Counsel for the government is directed to make arrangements for the conference call and is to communicate those arrangements to chambers at least 24 hours prior to the conference.

```
                                        _____
                                              MATTHEW F. KENNELLY
                                              United States District Judge
```

Date: June 25, 2014
      (corrected September 22, 2014)