# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12 C 7643 |
| | ) | |
| JOSEPH R. ROMINSKI, LORRINE | ) | |
| K. WALLIS, GREAT LAKES CREDIT | ) | |
| UNION, and LAKE COUNTY, ILLINOIS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The government has sued Joseph Rominski for unpaid federal income taxes, interest, and penalties. It seeks to enforce a federal tax lien against property in Lake County, Illinois, which the parties refer to as the Red Pine property. The legal title holder to the property is Lorrine Wallis, Rominski's former wife.

On April 5, 2013, the Court entered an agreed judgment holding Rominski liable for unpaid federal income taxes, interest, and penalties and determining that the overdue amounts constitute liens on all of Rominski's property and rights to property. The judgment reads as follows:

> IT IS HEREBY ORDERED AND ADJUDGED that the defendant Joseph R. Rominski, SS No. XXX-XX-0706, is personally liable to the plaintiff, United States, in the amount of $382,654.77, as of August 31, 2012, for federal income taxes assessed against him. On and after August 31, 2012, interest has accrued and shall accrue on these adjudged liabilities as specified in 26 U.S.C. §§ 6601, 6621-22, 28 U.S.C. § 1961(c), along with all other statutory additions. IT IS FURTHER ORDERED and ADJUDGED that under 26 U.S.C. §§ 6321-22, the amounts due,

described above, constitute liens in favor of the United States upon all property and rights to property belonging to Joseph R. Rominski.

*See* Dkt. no. 46.

Earlier this year, the government moved for partial summary judgment, arguing that a lien arising from the April 2013 judgment has attached to the Red Pine property. The Court denied the motion, *see United States v. Rominski*, No. 12 C 7643, 2014 WL 2880392 (N.D. Ill. June 25, 2014), and it set the matter for trial.

A bench trial was held on September 23, 2014. Mr. Rominski was the only live witness at the trial. The parties also submitted the depositions of Ms. Wallis and Lawrence Kagan, a revenue officer, as well as a number of exhibits. This decision constitutes the Court's findings of fact and conclusions of law.

The Red Pine property consists of real estate and a single-family home in Gurnee, Illinois. Mr. Rominski has been a practicing attorney at all relevant times. He currently lives at the Red Pine property. Mr. Rominski purchased the property in 1994. He was not married at the time but had three daughters from a previous marriage.

Mr. Rominski and Ms. Wallis married in September 1996. At the time they were married, Ms. Wallis owned a townhouse in Gurnee. She maintained ownership of that home throughout the marriage. But from 1996 through sometime in 2002 or 2003, the couple lived together at the Red Pine property.

In March 1997, Mr. Rominski transferred the Red Pine property to Wallis, in her capacity as trustee of a trust she had established. Pl.'s Ex. 10. No consideration was paid in return for the property, but Mr. Rominski and Ms. Wallis were married at the time, and they were both living at the Red Pine home. The trust was revocable, in whole or in part, by Ms. Wallis during her lifetime. Pl.'s Ex. 9, art. IX. The trust

instrument also permitted Ms. Wallis to sell any property belonging to the trust. *Id.*, art. VII.

Mr. Rominski testified during the trial that he had two purposes for transferring the property to Ms. Wallis's trust. One purpose was asset protection, specifically, to "take care of [his] wife" and to shield his assets from possible legal malpractice creditors. At the time, he was not facing any actual or anticipated legal malpractice claims. Another purpose was to facilitate the eventual transfer of the property to his daughters, who at the time were all minors. During her deposition, Ms. Wallis testified that she had a similar understanding of the purposes for the transfer of the Red Pine property. The Court found the testimony of both of them credible in this regard.

Mr. Rominski had a history of filing his federal income tax returns late. His 1993 return was due in October 1994, but he did not file it until November 1995. *See* Pl.'s Ex. 1. He paid the balance due, including interest and penalties, in late March 1996, about a year before he transferred the Red Pine property to the Wallis trust. *Id.*

Mr. Rominski's 1994 return was due in April 1995, but he did not file it until June 1996, and he still owed taxes, interest, and penalties. *See id.* By May 1998, Mr. Rominski had paid the balance due in full. *Id.*

Based on the evidence, there is no indication that Mr. Rominski filed a tax return for 1995. This is unexplained by the evidence, and thus the Court does not know whether Mr. Rominski earned enough income during 1995 to require him to file a return. There is no indication, however, that he had or has any past due taxes for that year.

At the time he transferred the Red Pine property in March 1997, Mr. Rominski's 1996 tax return was not yet due. He received, on an unknown date, an extension to

mid-September 1997 to file the return. He did not actually file it, however, until April 2001. The return reflected a tax due and owing of a little over $38,000. *See id.* From the available evidence, it does not appear that Mr. Rominski paid any withholding taxes during 1996. His payroll tax return (form 941) for the third quarter of that year was due at the end of October 1996, but he did not file it until January 1998. It reflected a balance due. The amounts due were eventually paid, but the last payment was not received until July 2001. *Id.* Mr. Rominski's payroll tax return for the fourth quarter of 1996 was due at the end of January 1997 but likewise was not filed until January 1998. It also reflected a balance due. The amounts due were eventually paid, but the last payment was not received until December 2002. *Id.*

In 1999, Mr. Rominski learned that the secretary at his law office had been embezzling funds from his law practice. He contacted law enforcement, and the secretary was charged with and convicted of a felony offense. Mr. Rominski also obtained a civil judgment against her in excess of $300,000.

In December 2001, Ms. Wallis, in her capacity as trustee, deeded the Red Pine property to herself in her individual capacity. Mr. Rominski prepared the deed. This was done to enable Ms. Wallis to use the property as collateral for a loan. Mr. Rominski testified credibly that at the time, Ms. Wallis was in the process of applying for a loan of $50,000 to $75,000 to be used by Mr. Rominski to pay down his tax-related debts, and the property needed to be in her name individually to use as collateral. The loan application was turned down, so the property was not pledged. No steps were ever taken to return the property to the trust. Mr. Rominski testified credibly that he simply forgot to take this step.

Ms. Wallis and Mr. Rominski separated sometime in 2002 or 2003, and they were divorced in February 2004.  When they separated, Ms. Wallis moved back to her Gurnee townhouse, and Mr. Rominski continued to live at the Red Pine property.  Ms. Wallis has been to the Red Pine property only once since the divorce.

At all times, all expenses relating to the Red Pine property have been paid by Mr. Rominski.  That said, during the course of the Rominski-Wallis marriage, the funds used to pay property-related expenses were marital funds, and both Mr. Rominski and Ms. Wallis lived there.  (Ms. Wallis testified credibly that Mr. Rominski paid some of their expenses from his income and that she paid some from her income.)  Since the divorce, although the property has been and continues to be in Ms. Wallis's name, she has paid no expenses relating to the property and has derived no benefit from it.  Ms. Wallis has not encumbered the property and has not placed any limits on Mr. Rominski's use of it.

The Rominski-Wallis divorce decree does not on its face describe how their property was divided.  Rather, it recites simply that "the parties had already divided" their real and personal property and debts.  Pl.'s Ex. 8.  Ms. Wallis testified, credibly, that what this means is that "I took out what I brought in, and he took out what he brought in. . . .  I had the townhouse, and he had his house."  Pl.'s Ex. 16, Wallis Dep. at 33-34.  Their understanding then and now was that Mr. Rominski would keep the Red Pine property, and Ms. Wallis would keep the Gurnee townhouse.  Ms. Wallis later sold the townhouse and kept the proceeds.  With regard to the Red Pine property, she testified as follows:

Q:      So is the fact that your name is on the deed to the Red Pine
property - - is that just an oversight?

A:      Yes.

> Q:      It should actually be Joseph's name on the deed to the Red Pine property?
>
> A:      It is Joseph's property.
>
> Q:      So then, for example, if a creditor foreclosed on the property and there was excess money to be distributed, you wouldn't be claiming any portion of that money, right?
>
> A:      I would not.

Pl.'s Ex. 16 at 35.  The Court finds this testimony credible.

Under 26 U.S.C. § 6321, "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."  The lien attaches to the taxpayer's property or rights to property when the tax is assessed (unless another date is specified by law) and remains until the person satisfies the liability or it "becomes unenforceable by reason of lapse of time." *Id.* § 6322.  A tax lien "applies to property owned by the delinquent at any time during the life of the lien," including property that he or she acquires after the assessment date. *Glass City Bank of Jeanette v. United States*, 326 U.S. 265, 268 (1945).  "We look initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach, then to federal law to determine whether the taxpayer's state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation."  *Drye v. United States*, 528 U.S. 49, 58 (1999).

The government contends that Ms. Wallis has, at all relevant times, held title to the Red Pine property merely as Mr. Rominski's nominee, in other words, that he is the true owner.  "The Supreme Court has broadly interpreted section 6321 to include not

only the property and rights to property owned by the delinquent taxpayer, but also property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer." *Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005) (citing *G.M. Leasing Corp. v. United States*, 429 U.S. 338, 350-51 (1977)). "A nominee is one who holds bare legal title to property for the benefit of another." *Scoville v. United States*, 250 F.3d 1198, 1202 (8th Cir. 2001).

The government's primary argument on the nominee question focuses on the time of Mr. Rominski's transfer of the property to Ms. Wallis in trust in 1997. The government has failed to prove that Ms. Wallis was, at that time, a nominee. The Court quotes from its decision on summary judgment the standard governing this issue:

> Ordinarily, the Court would look to Illinois law to determine whether Wallis qualified as nothing more than Rominski's nominee with respect to the Red Pine property following the 1997 transfer. But "Illinois law does not adequately articulate the nominee test . . . ." *United States v. N. States Invs., Inc.*, 670 F. Supp. 2d 778, 788 (N.D. Ill. 2009). When state law provides little or no criteria for a nominee relationship, courts look to the common law factors used by federal courts to determine whether a person is a nominee. *See id.* ("[T]his court follows the federal common law to the extent that federal law adds flesh to the state law bones."); *May v. United States*, No. 07-10531, 2007 WL 3287513, at *2 (11th Cir. Nov. 8, 2007) ("[S]ince Alabama law fails to delineate a test for determining the 'real intent' of a title transfer between spouses, we are guided by the common-law factors generally applied by federal courts to determine the existence of a nominee relationship."); *Cody v. United States*, 348 F. Supp. 2d 682, 694 (E.D. Va. 2004) ("When faced with similar tax levy disputes, federal courts sitting in states whose law of nominee ownership is similarly undeveloped have typically looked to nominee ownership criteria employed in other federal tax collection cases.").
>
> With slight variations, federal courts have used the following factors to determine whether a person is a nominee with respect to certain property: 1) the person paid no or inadequate consideration for the property; 2) the property was transferred to the person in anticipation of a lawsuit or liability, 3) the transferor of the property continues to possess, enjoy, and control the property despite the transfer, 4) the person and transferor have a close relationship, and 5) the transfer of property was never recorded.

> *Oxford Capital Corp. v. United States*, 211 F.3d 280, 284, n. 1 (5th Cir.
> 2000); *United States v. Towne*, 406 F. Supp. 2d 928, 937 (N.D. Ill. 2005).
> Some courts have considered the additional factor of whether the
> transferor used personal funds to purchase or maintain the property.
> *Cody*, 348 F. Supp. 2d at 694-95; *Baum Hydraulics Corp. v. United States*,
> 280 F. Supp. 2d 910, 917, n. 14 (D. Neb. 2003); *In re Richards*, 231 B.R.
> 571, 579 (E.D. Pa. 1999).

*Rominski*, 2014 WL 2880392, at *4.

The Court analyzes this issue much as it did in denying the government's motion for summary judgment. First, when Mr. Rominski transferred the Red Pine property to Ms. Wallis, he did not receive any consideration in return. But they were, of course, married and living together on the property at the time, and Ms. Wallis was paying some of their joint expenses.

Second, the transfer took place about a year after Mr. Rominski had finished paying off taxes, penalties, and interest for the year 1993 and at a time when he still had taxes, penalties, and interest due and owing for the year 1994, though that was a relatively modest sum. He had not filed an income tax return for 1995, but then again, there is no evidence of a tax due and owing for that year. His 1996 income tax return was not yet due, but as of the time of the transfer he had two past due withholding tax returns that, if filed on time, would have shown a balance due.

A key issue is whether Mr. Rominski made the transfer in anticipation of a lawsuit or liability. As the Court stated in its summary judgment ruling, "[c]ourts have interpreted this factor in the nominee test to involve a situation in which the taxpayer transferred property to shield it from a creditor associated with an expected lawsuit or liability, not simply that the taxpayer expected a lawsuit or liability at the time of transfer." *Id.* at *5 (citing cases). Though Mr. Rominski likely was aware at the time that

he was behind on his withholding tax payments and therefore would be subject to levy, the government has not shown that the property transfer was motivated in any way by a desire to avoid this or any other particular expected liability. Mr. Rominski and Ms. Wallis both testified, credibly, that he initiated the transfer for estate planning and professional liability purposes. The Court was unpersuaded by the government's argument that this testimony should not be believed or should carry little or no weight. And although Mr. Rominski said that part of his motivation was to shield the property from clients who might one day sue him for malpractice, "[t]hat rather inchoate concern . . . is not the type of expected liability that has tended to carry the day for the government" in claiming that the title holder is a mere nominee. *Id.*

There is a viable distinction between legitimate asset protection and estate planning and avoidance of actual or anticipated creditors. For example, in *In re Richards*, 231 B.R. 571 (E.D. Pa. 1999), the court persuasively distinguished the sort of activity contemplated by the second factors of the nominee test from "estate planning," in that case, "establish[ing] [a] trust to protect the home generally from future creditors." *Id.* at 579. The Court finds that Mr. Rominski made the 1997 transfer for legitimate estate planning purposes and not to avoid an actual or anticipated debt.

As for the third factor in the nominee test, it is undisputed that Mr. Rominski continued to possess and enjoy the Red Pine property even after transferring it to the Wallis trust in 1997. It is also undisputed that Mr. Rominski financed the maintenance of the property, insurance, mortgage payments, and so on. But the government's reliance on those factors in this case does not adequately take account of the fact that Mr. Rominski and Ms. Wallis were married, and living together at the Red Pine property,

at the time of the transfer in 1997 and at all times through at least the latter part of 2002. Even though Mr. Rominski continued to possess and use the property during that period, Ms. Wallis did so as well. And as the Court has noted, the funds from which Mr. Rominski made the payments in question were funds earned during the marriage and thus were marital funds that were used in a way that benefitted both of them, and Ms. Wallis paid other joint expenses. As at least one court has noted, a number of the factors in the nominee test "provid[e] little utility in distinguishing tax shams from legitimate titling decisions between spouses," largely because those factors nearly always would point in favor of finding inter-spousal transactions to lack legitimacy. *Spotts v. United States*, 429 F.3d 248, 253 n.2 (6th Cir. 2005).[1]

In sum, the Court concludes that the government has failed to show that when Ms. Wallis acquired the property in 1997, she was Mr. Rominski's nominee. The transfer was a legitimate one, made for legitimate purposes.

This, however, is not the end of the story. As discussed earlier, Mr. Rominski and Ms. Wallis were divorced in 2004. Their settlement contemplated re-transfer of the Red Pine property to Mr. Rominski. But that never happened. And since the time of the divorce—and for a significant period before that—Ms. Wallis has not benefitted from the property in any way. She has not lived in it or otherwise used it. Nor has she paid for any expenses involving the property. In contrast to the period when they were married, all funds used to maintain the property and to make payments for property taxes, insurance, and so on have been Mr. Rominski's funds and his alone—not marital funds

---

[1] With regard to the other factors in the nominee test, it is undisputed that Mr. Rominski and Ms. Wallis had a close relationship at the time of the 1997 transfer, and it is likewise undisputed that the transfer was promptly and properly recorded.

as had been the case prior to the divorce.  Since the time of the divorce, the property has been Wallis's in name only.

Though this situation does not fit neatly into the nominee test as the Court has described it, that is of little consequence.  The ultimate issue is who is the real owner of the property.  It is abundantly clear that, since the time of the divorce, Mr. Rominski has been the sole true owner.  Ms. Wallis said exactly that, credibly, during her deposition: she stated that "[i]t is Joseph's property"; the property was supposed to have been deeded back to him consistent with their property settlement; and the failure to do so was an oversight.  Pl.'s Ex. 16 at 35.  This testimony could hardly be clearer:  since the divorce in 2004, Ms. Wallis has been holding the property for Mr. Rominski.  That is the very definition of a nominee:  "one who holds bare legal title to property for the benefit of another."  *Scoville*, 250 F.3d at 1202.

For these reasons, the Court finds that the government has proven by a preponderance of the evidence that at all times since February 24, 2004, the date of the Rominski-Wallis divorce decree, the Red Pine property has been and is the property of Joseph Rominski and that Lorrine Wallis holds title as his nominee.  For this reason, the Court concludes that the government's lien as determined by the April 5, 2013 judgment in this case attaches to the Red Pine property.

The Court directs the government to prepare a proposed order embodying the Court's conclusion in this regard and directs Mr. Rominski to review it for form.  The proposed order is to be submitted by no later than October 24, 2014.  The case is set for a telephone status hearing on November 3, 2014 at 8:45 a.m.  Counsel for the government is directed to make arrangements for the telephone status hearing and is to

communicate the arrangements to the undersigned judge's chambers by no later than October 30, 2014.  The Court will inquire at the status hearing what, if anything, remains to be determined in this case.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  October 17, 2014